I .BROWN, J.
Defendant, Bossier Parish School Board (“School Board”), appeals the trial court’s judgment awarding plaintiff, Jeannine Blackwell, $45,368.39 in damages for injuries she sustained when she slipped and fell after taking a shortcut beneath the Bossier High School football stadium. We reverse and render.

FACTS

On November 1, 1996, plaintiff, a member of the Bossier High School Band Booster Club (Booster Club), was working for the band boosters at the concession stand located beneath the bleachers at the Bossier High School football stadium. Plaintiff had been a member of the Booster Club for two years and had worked at the concession stand for the club on many occasions.
The front of the concession stand faces a wide, straight sidewalk that runs the length of the grandstand and feeds into the bleachers through elevated paved ramps. Except for the sidewalk, ramps and concession stand, the area under the stadium is grass and dirt.
Workers enter the concession stand through a rear door. A pathway from the sidewalk runs along one side and the back of the stand to the rear door. Behind the concession building is the slanting underbelly of the stadium.
The Booster Club consists of parents of members of the high school band. They have their own officers and independently conduct their business. They are not under the control of the School Board. The *1250 Booster Club has the keys to the concession stand and operates it as they see fit. They pay the school 25% of the profits and keep 75%.
Outside the rear door of the concession building was a concrete step. At least two years before this incident, the Booster Club had placed a 4’ x 8’ sheet of plywood behind the concrete step in the unusable area caused by the slant of the stadium. A large coke box or cooler to store ice was initially placed by the Booster Club on the | {.plywood. At the time of this incident, the cooler had been removed but the plywood remained. This area was not a walkway and its utility was limited to storage.
There was no accident history in relation to the area behind the concession stand where the plywood was placed. Cindy Friday, a member and officer in the Booster Club, had worked the concession stand for three years before this accident and testified:
Actually, no one had ever slipped and fallen on it (plywood) before. I had, like my legs, like — -when I walked out, like, slid but I never had fallen, and we — you know, we have told everyone just to be careful.
On the night of the accident, plaintiff and a co-worker left the concession stand to check on the game. Instead of walking on the unobstructed pathway from the rear door to the sidewalk, they chose to take a shortcut beneath the stadium to the ramp where they would have had to slide between the guard railing. As plaintiff walked across the plywood she slipped. She put her arm down to stop her fall, jamming her shoulder. She sustained a torn rotator cuff which required surgical repair. Plaintiff filed a petition for damages against the Bossier Parish School Board, asserting strict liability and negligence claims. Her husband, George Blackwell, was a joint petitioner, asserting a claim for loss of consortium.
On October 7, 1998, the trial court awarded plaintiff $15,368.89 in special damages, plus $30,000.00 in general damages. Mr. Blackwell’s loss of consortium claim was denied. Defendant now appeals the trial court’s judgment.
DISCUSSION
La. R.S. 9:2800 provides that no person has a cause of action against a public entity based on strict liability for damages caused by the condition of things within its care and custody unless the public entity had, prior to the occurrence, actual or constructive notice of the defect which caused the damage and a reasonable opportunity to remedy the defect and failed to do so. Thus, plaintiffs |3burden of proof against a public entity in a premises liability claim is the same under either a theory of negligence (La.C.C. art. 2315) or strict liability (La.C.C. art. 2317).
A landowner has a duty to discover any unreasonably dangerous condition or use of his premises and to either correct the condition or warn of its existence. Collins v. Whitaker, 29,324 (La. App.2d Cir.04/02/97), 691 So.2d 820. The test for premises liability is whether in the management of his property a landowner has acted as a reasonable man in view of the probability of injury to others. The duty of a landowner is not to insure against the possibility of an accident on his premises, but rather to act reasonably in view of the probability of injury to others. Shipley v. Shipley, 30,283 (La.App.2d Cir.02/25/98), 709 So.2d 901.
At the outset, we note that the issues presented herein are subject to the manifest error standard of review as enunciated in Stobart v. State Through DOTD, 617 So.2d 880 (La.1993). The manifest error standard of review is applicable in cases involving findings of unreasonable risks of harm or unreasonably dangerous defects. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.03/04/98), 708 So.2d 362.
The trial court’s written opinion states “that the warped piece of plywood, placed as a ‘band aid’ over the muddy ground caused Ms. Blackwell’s fall and created an unreasonably dangerous condi *1251 tion. The Bossier Parish School Board could have easily made this area safer by pouring concrete or simply by placing shell in the area where the plywood was located.”
The Booster Club, a separate entity from the school, solely operated the concession stand and split the profits with the school. The plywood was placed on the ground by the Booster Club without input from the school. Its purpose was to cover muddy ground to protect Booster Club members who were getting ice from the cooler, not to encourage the use of a shortcut over muddy ground to the ramp and bleachers. The School Board provided a safe way for workers to enter and |4leave the concession building. At no time was the path plaintiff took to the ramp ever intended by the School Board to be a route to leave the building or access the stadium. In fact, access in this manner was blocked by the metal guard railing on the ramp.
There was no prior history reported to the school except, as noted, that Cindy Friday slipped but did not fall. Plaintiff was warned by other booster club members of the slippery nature of the plywood, a condition that was obvious to plaintiff, who on many occasions had walked over it taking an improper shortcut to the stadium. The Booster Club was the sole creator of the condition and had they been concerned, they could have removed or replaced the plywood.
Every imperfection is not a legal defect. Orleans Parish School Board v. City of New Orleans, 585 So.2d 643 (La. App. 4th Cir.1991), writ denied, 589 So.2d 1069 (La.1991). Under these facts, we find that the trial court was clearly wrong in finding that the School Board did not act reasonably in view of the probability of injuries to others. The School Board’s duty to act reasonably was not breached. See Lemmon, J., concurring, Pitre v. Louisiana Tech University, 95-1466, 95-1487 (La.05/10/96), 673 So.2d 585, 596.
Furthermore, plaintiff knew the shortcut she was taking was slippery and was aware that the pathway to the sidewalk provided by the School Board was a safer route; but, in her haste, she chose to take the risk. Under principles of comparative fault, plaintiff failed to use ordinary care and is solely responsible for her fall. La. C.C. art. 2323.

DECREE

For the reasons expressed above, the trial court’s judgment is reversed and judgment rendered in defendant’s favor dismissing all claims at plaintiffs cost.
REVERSED AND RENDERED.
WILLIAMS, J., dissents. The trial court’s judgment is correct.
STEWART, J., dissents for reasons assigned by WILLIAMS, J.